MITCHELL *vs.* THE SOUTHWESTERN RAILROAD.

1. A railroad company may be sued in any county in which the cause of action originated, by any one whose person or property has been injured by such company, its officer, agents or employés, for the purpose of recovering damages for such injury, whether there is an agent of the company resident in the county of the suit, and upon whom service may be perfected, or not.

2. Where a suit was brought against a railroad company in the county where the injury complained of took place, and the sheriff returned that he had served a certain person as agent for defendant at the depot in that county, and a second original of the declaration and process also had been served upon the president of the company, such service was sufficient.

(*a.*) The superior court of that county having jurisdiction, if there was no provision in the statute, by necessary implication, it would have the right to assert its jurisdiction by causing its process to be served on the proper officer of the corporation in person, if resident in this state, or by publication, if non-resident.

3. In England prior to the statute of 52 Henry III., 1267, where one sued another maliciously and without probable cause, he was liable to such person in damages in an action on the case; but since

the passage of that statute, which gave costs to the defendant *per falsum clamorem*, the bringing of a civil suit maliciously and without probable cause was not a ground upon which an action could be maintained, unless the action was one whereby the person of the defendant was arrested or his property attached, or some special damage was done to him; and this it was necessary to set out specially. Such was the common law as adopted in this state by the act of 1784.

(*a.*) If a railroad company, through its superintendent, consented that a mill-owner might erect a dam which would overflow a portion of its right-of-way, and upon a sale by the owner to another, the latter obtained a similar license; and the dam having been broken in consequence of a flood, the company filed a bill and obtained an interlocutory injunction to prevent the owner from rebuilding the dam; and if, upon the final trial, the bill was dismissed, an action would lie for the malicious suing out of the injunction without probable cause, whereby the owner had sustained special damage in being deprived of the use of his property.

4. This principle is not altered by the fact that the case was in equity, and that the damages were consequent upon an injunction granted by the chancellor.

November 3, 1885.

Railroads. Jurisdiction. Service. Damages. Actions. Malicious Suit. Injunction. Before N. A. SMITH, Esq., Judge *pro hac vice.* Sumter Superior Court. April Term, 1885.

On March 19, 1883, B. C. Mitchell brought his action for damages against the Southwestern Railroad Company, alleging, in brief, as follows: In 1880, and prior to that time, the plaintiff was the owner and in the rightful enjoyment of a valuable mill in the city of Americus, in Sumter county, which was run by water-power, and was located near the railroad of the defendant. He had the right to flood the land of the company with his dam, being an easement which he had acquired by authority of the company for a valuable consideration. A storm washed away a portion of his dam and temporarily suspended his business. The defendant filed a bill to enjoin him from rebuilding his dam so as to continue his business, and obtained an injunction for that purpose. This was done by false and mali-

cious allegations, and entirely without reasonable and probable cause, and was for the purpose of injuring and harassing the plaintiff. By reason of this, the plaintiff's mill was stopped, causing him to lose the profits from it; the property had deteriorated in value ; custom which had been built up was diverted from the mill ; and the plaintiff has been compelled to expend large sums for attorneys' fees. All these wrongful and illegal acts were done in Sumter county. It was alleged that a part of the defendant's road lay in that county, and that the defendant had an agent there.

Process issued, and the sheriff made the following entry of service :

'' I have this day served Lott Warren, agent, at the depot, at Americus, Sumter county, Georgia, personally with a copy of the within, this March 20th, 1883.''

A second original issued, with process directed to the sheriff of Bibb county, and was served on the president of the defendant in that county.

The defendant traversed the entry of service and pleaded to the jurisdiction, alleging that it had no office and no agent in Sumter county; that all of its property in that county was held under a lease by the Central Railroad, and the agent served was the agent of that company, and that the office of the defendant was in Bibb county. The defendant also made a motion to dismiss the case, on the ground that there was no legal service.

On the trial, the plaintiff introduced the record of the equity case, which terminated in his favor. A report of it will be found in 69 *Ga.*, 115, *et seq.* He also introduced testimony substantially as follows :

*C. W. Coker* testified as follows : He built the mill and dam in 1868 ; had the consent of the road to flood the right-of-way, the authorities stating that they never made deeds, but never interfered with such improvements, as they were of advantage to the railroad in the way of shipping grain. The mill was built at an outlay of about $55.000

altogether. The railroad made no objection to the mill or pond. The witness sold the mill to B. C. Mitchell for ten thousand dollars. The mill was in sight of the road, near the right-of-way of the defendant; part of the dam and pond was on the right-of-way.

*B. C. Mitchell* testified as follows: Bought the property of C. W. Coker; before buying, saw Virgil Powers, superintendent, and inquired about the authority of Coker to use the right-of-way by back-water, etc. He told witness the company consented for Coker to use the right-of-way; that they never made deeds to their right-of-way, but the company favored the building of such enterprises along their road. The railroad has used the water of the pond for a time; the dam prevents culverts from undermining; it also constitutes part of the approach to a road crossing; witness has spent a considerable sum of money on the property. The mill was shut down three years by the injunction. When the bill was served, he had bought a large bill of timber, and it was lost. Lost the repairs being done at the time the bill was filed, worth $150. The mill was worth from five to ten dollars per day during the time it was shut down, deducting all expenses, hire of miller, repairs, insurance, etc. The mill would net $1,200 per year for the three years. (The witness estimated the amount of damages to the mill-house and race and stated the amount of attorneys' fees.) Walden, the supervisor of the defendant, told him he would be glad for him to back the water near the culvert, as it would protect the culvert in case of a freshet. The mill and dam were built in 1868.

*W. A. Black* testified: Was a director of the railroad from its building to 1868, twenty years; then became agent. The mill was built soon after my agency began. Mr. Powers, at the building of the mill, was superintendent, and frequently passed along by the mill. Mr. Raoul succeeded Mr. Powers as superintendent. My agency terminated in 1878. Mr. Powers was a director when the

v-75-26

company was organized, and was a director when I quit the agency at the depot in Americus, Ga., 150 or 200 yards from the pond. The pond is in plain view of the road and depot. Mr. Raoul frequently passed there. J. E. Jones was a director of the road when witness ceased to be. Mr. Holt died about 1880, and Jones became president. The Central Road had control of the Southwestern Road when I became agent at Americus; it was after the lease. I received orders from Savannah. The Central has been controlling and managing the road since. Did not know of any agent of the defendant in Sumter county since the lease; did not know of his own knowledge about the terms of the lease, outside of the papers themselves.

There was also other evidence which need not be detailed. On motion, the court granted a non-suit. The following are the assignments of error:

(1.) Plaintiff offered in evidence the original bill filed by the Southwestern Railroad. The court held that the counsel would have to put in all the record, including all the pleadings, orders, etc., to the decree, which they were forced to do, to get in what they wanted.

(2.) Plaintiff offered the motion for new trial by defendant in said case, the judgment thereon, the bill of exceptions, as stated by counsel then and there, for the purpose of showing a continuation of said litigation. The court refused to allow either, unless plaintiff would put in, in connection therewith, all the evidence *pro* and *con*, in said original case of file.

(3.) Defendant moved for a non-suit because there was no service; because the superior court of Sumter county had no jurisdiction; and because plaintiff had failed, by sufficient and proper proof, to show a want of proper cause for the original suit; and further, because the plaintiff had failed to show any malice on the part of the railroad. Counsel were discussing said motion; the court interrupted counsel, and said he did not care to hear from plaintiff on points made by

defendant's counsel for non-suit; and the plaintiff's coun-- sel could address themselves entirely to the question of whether the proof showed any notice to the defendant of plaintiff's right to overflow the right-of-way, and the effect of the overflow, and the advantages of said mill, so as to show malice, and said to counsel they could assume that the proof showed want of probable cause, as the court considered that as established in the case. Counsel undertook to meet the suggestions of the court, but failed, and the court awarded a non-suit. Counsel asked the court to name the point or grounds of non-suit in judgment. The court admitted the ground, but failed to comply with the request, although the court had interrupted the counsel as to other questions in the case, and thereby prevented counsel from correcting any other defect.

E. G. SIMMONS; GUERRY & SON, for plaintiff in error, cited, on non-suit, 42 *Ga.*, 283, 435; 69 *Id.*, 619; 65 *Id.*, 309; 66 *Id.*, 196; 63 *Id.*, 488. On malice and probable cause, 5 Am. Dec., 547; 9 *Id.*, 687; 12 *Id.*, 267. On notice to corporation, 1 Peters, 299; 30 Conn., 380; 1 Cold. (Tenn.), 611; Taylor Corp., §210. On liability of railroad, 14 Am. Dec., 599; 7 *Id.*, 603; 6 Cal., 399; 1 Hilliard Torts, 443; 2 Wait's Act. and Def., 337; 4 *Id.*, 339, 341; 18 Cent. L. J., 242; 20 *Id.*, 274.

LYON & GRESHAM; HAWKINS & HAWKINS, for defendant, cited, on non-suit, 27 Ill., 489; 19 Ala., 344; 26 *Id.*, 616; 33 Vt., 486. On malice and probable cause, 2 High. Inj., §1648; 10 B. Monroe, 17; 8 *Id.*, 37; 55 Miss., 567; 4 Mo. App., 195, 505; 2 Sedg. Dam., 210, note; 31 Barb., 158; 20 N. Y., 99; 73 *Id.*, 377; 53 Ill., 479; 12 How., 168, 179; 10 Humph., 325; 49 *Ga.*, 160; Code, §§2987, 2957; Wood Dam., 571. On service, Code, §3369. On jurisdiction, Code, §3406; 69 *Ga.*, 763; 53 *Id.*, 501. On liability of railroad, 98 U. S, 187; 30 *Ga*, 519; 55 *Id.*, 299; Code, §3220.

BLANDFORD, Justice.

1. There are several questions in this case. It is insisted that there was no jurisdiction in Sumter superior court to hear and determine this case, because there was no agent of said company resident in Sumter county, upon whom service could be perfected. To this the plaintiff replied, that the acts of defendant and the damage which was done were done in Sumter county. We think that section 3406 of the Code, which enacts that railroad companies shall be liable to be sued in any county in which the cause of action originated, by any one whose person or property has been injured by such railroad company, their officers, agents or employés, for the purpose of recovering damages for such injury, fully answers the objection that the supe rior court of Sumter county had no jurisdiction of the case. So we hold that the superior court of Sumter county had jurisdiction in this case.

2. The next question made is, that there was no service of the declaration and process which authorized the supe-rior court of Sumter county to hold jurisdiction of this case. The evidence upon the record showed that the sheriff had returned that he had served a certain person as agent of defendant at the depot in said county; also that a sec-ond original of the declaration and process had been served on the president, one Jones, of said railroad company. We think that this was sufficient service. Code, §3369, *et seq.* The superior court of Sumter county having juris-diction of the case, if there was no provision in the statute, the court, by necessary implication, would have the right to assert its jurisdiction by causing its process to be served on the proper officer of the corporation in person, if resi-dents in this state, as was done in this case, or by publi-cation, if non-resident. Code, §§2369, 3370, *et seq.*

3. The next question in this case is, can an action be maintained in this state for the bringing of a civil suit maliciously and without probable cause. In England, be-

fore the statute of 52 Hen. III., 1277, it was the practice constantly to hold that, where one sued another maliciously and without probable cause, he was liable to such person in damages upon an action on the case, but since the passage of that statute, which gives costs to the defendant *per falsum clamorem*, the bringing of a civil suit maliciously and without probable cause was not a ground upon which an action could be maintained. Yet there was this distinction: when an action was sued out maliciously and without probable cause, whereby the person of the defendant was arrested, or his property attached, or any special grievance to defendant, then in such a case the action would lie, and, as we understand, that was the common law when this state was a province, and when our adopting statute was passed in 1784, and would have been the law without this statute. There is a case which states this doctrine clearly and explicitly. In Savil *vs.* Roberts, 1 Salkeld R., 13, a decision by Lor d Holt, which is declaratory of the common law, in which it is stated that, since the passage of the act allowing co sts to defendants where plaintiffs are non-suit or fail to recover, an action for maliciously suing out an action cannot be maintained. Yet, before this statute such actions were constantly brought and maintained; but since the passage of the act, in order to maintain the action, it must be shown that the defendant maliciously sues the plaintiff either with intent to imprison him or do him some special prejudice; then an action on the case lies, and the grievance must be set out specially. We take this to be the common law, and as there is no statute changing this law, it is of force in this state.

The declaration in this case and the proofs offered by the plaintiff tending to sustain it, showed that the defendant consented that one Coker might erect a certain mill-dam, which would overflow a portion of defendant's right-of-way. This consent or license was given by the superintendent of defendant. That Coker sold to Mitchell, the plaintiff,

and Mitchell procured a similar license.   The dam being broken in consequence of a flood, defendant filed a bill to enjoin the plaintiff from rebuilding it.   The chancellor granted the injunction, which was interlocutory, and on the final trial, a decree was rendered for the present plaintiff, and the bill dismissed; and this action was brought to re cover damages which the plaintiff had sustained from the malicious suing out of said injunction without probable cause, whereby he had sustained special damage in being deprived of the use of his property.   The court, when the proofs were submitted by the plaintiff, granted a non-suit, and the questions made here arise from this action of the court.

4. It is further contended by the able and learned counsel for defendant in error, as the case or action, which is alleged to have been brought without probable cause, and maliciously, was a case in equity, and as the damages were consequent upon an injunction granted by the chancellor, that no action would lie in such a case; but we fail to perceive any difference between a case maliciously and without probable cause prosecuted at law or in equity, when special damage has accrued to the party. In our judgment no such distinction exists.   We are aware that there is respectable authority to the contrary, but we think that the current of authority is with our view of the law.   The admirable article of M. W. Hopkins, Esq., in the Central Law Journal of March 28, 1884, fully examines this subject, and he collates and refers to all the authorities on the same.   The conclusion which we have arrived at is that the court erred in granting the non-suit in this case.

Judgment reversed.