KRZYSZKE *v.* KAMIN.

1. MALICIOUS PROSECUTION — INJUNCTION — CIVIL ACTION—AVERMENTS OF BILL OF COMPLAINT.

Malicious prosecution lies for the wrongful issuance of an injunction to restrain a defendant from disposing of his personal property, upon averments of a judgment creditor's bill making him a party, praying for an injunction against other defendants, not including him; the issuance of the process being unsupported by the necessary averments in complainant's bill, which failed to show probable cause for the restraining writ.

2. SAME—DAMAGES—EVIDENCE.

A liberal rule should be applied in admitting evidence of damages in such action, and all the facts and circumstances having any tendency to show damages or their probable amount, should, in view of the difficulty of arriving at a result, be placed before the jury.

3. SAME—DIRECTING VERDICT—EVIDENCE—PRESUMPTIONS.

It was not error to leave to the jury only the question of damages, where a want of probable cause appeared, and the presumption of malice thereby arose, and the presumption was not rebutted by any evidence.

4. COSTS—STATUTES—JUSTICES OF THE PEACE.

A judgment of $100, in an action of malicious prosecution, warrants the award of costs in favor of plaintiff under 3 Comp. Laws, § 11257, since justices of the peace have no jurisdiction of that form of action.

Error to Wayne; Rohnert, J. Submitted October 12, 1910. (Docket No. 45.) Decided November 11, 1910.

Case by Ludwig Krzyszke against Gustave Kamin, for the malicious prosecution of a civil action. Judgment for plaintiff, and defendant brings error. Affirmed.

*James H. Pound,* for appellant.

*Guy A. Miller,* for appellee.

STONE, J. This is an action on the case for damages for an alleged malicious prosecution by the issuance of an unauthorized injunction against the plaintiff. The declaration was inartificially drawn, but, not having been demurred to, is, we think, sufficient to support a recovery. It avers that, to wit, on March 1, 1908, the plaintiff was a resident of the township of Huron, in the county of Wayne, and was there the owner and in possession of certain personal property, to wit, a quantity of potatoes and hay, of the value of $500; that he had advertised an auction sale of said property to be held on said day; that said sale had been advertised extensively, and that, to wit, 300 persons assembled upon plaintiff's premises to attend said sale, and bid upon and purchase said personal property; that it was the duty of defendant to refrain from interfering with the possession and enjoyment by said plaintiff of said property, and from selling said personal property; and that it was the duty of defendant to refrain from taking any wrongful action of any nature, particularly the unlawful, wrongful, or malicious issuance of the writ of injunction and service thereof upon plaintiff, the result of which would be to hinder, interrupt, or disturb plaintiff in the use, enjoyment, or sale of said farm produce. But plaintiff avers that said defendant did wrongfully, unlawfully, and maliciously cause the issuance of a certain writ of injunction out of the circuit court of Wayne county, which writ was directed against this plaintiff and others, and plaintiff avers that there was no lawful cause whatever for the issuance of said writ of injunction; that said writ was issued without the authority or direction of any of the judges of said court, and was caused to be issued by said defendant through his attorney; that said injunction was thereafter served upon this plaintiff. Plaintiff avers that by reason of the unlawful issuance and service of said injunction he lost the sale of said personal property, and was put to great expense and damage in connection therewith, and lost the profit in said sale, to plaintiff's

damage in the sum of $500. The plea was the general issue.

Upon the trial of the case, the plaintiff offered in evidence the bill of complaint in the cause in which the injunction was issued, as well as the writ of injunction and the return thereon indorsed. Said bill of complaint was a creditor's bill in which this defendant, Gustave Kamin, was complainant, and Charles Kamin, Julius Kamin, with their wives, and this plaintiff were defendants. After setting forth and describing two certain judgments which the complainant therein had obtained against said Charles Kamin and Julius Kamin, and the issuance and return of executions thereon unsatisfied, and that said judgments were still in force and unsatisfied, said bill contained the following averment:

"And your orator further shows that he has been informed and believes it to be true that the said Charles Kamin and Julius Kamin have a considerable amount of money and of legal and equitable debts, claims, and demands due them from different persons whose names are unknown to your orator, and that one Ludwig Krzyszke is their debtor in the sum of about $600, and for other sums of money and other personal property either in possession or held in trust for them (except such trust as has been created by, or the funds held in trust has proceeded from, some person other than the said Charles Kamin and Julius Kamin), the situation, value, and particulars of which are unknown to your orator. And your orator is fearful that the said Charles Kamin and Julius Kamin will make way with or place the same beyond the control of this court, or a court of law."

The above contains the only reference there is in said bill to the said Ludwig Krzyszke, except as hereinafter stated. There was no prayer for relief or for injunction as against him. The bill did pray that said Charles Kamin and Julius Kamin, and their attorneys, agents, etc., be enjoined from collecting, receiving, selling, transferring, assigning, delivering, or in any manner using, controlling, interfering, meddling with, or disposing of any debts or demands due to them, or any real or personal

estate, goods, wares, merchandise, account books, bills, checks, promissory notes, bonds, mortgages, judgments, or other securities, things in action, property, or effects, whether in their own names or hands, or in the names or hands of, or held by, any other person or persons for them, and for their use or benefit, or in trust for them, express or implied, except where such trust has been created by, or the funds held in trust has proceeded from, some person other than the said Charles Kamin and Julius Kamin, until the further order of the court. The only other place in said bill in which the said Ludwig Krzyszke was named was in the prayer for process, which read as follows:

"May it please this court to grant unto your orator the writs of subpœna and injunction issuing out of and under the seal of this honorable court to be directed to the said Charles Kamin, Julius Kamin, Caroline Kamin, Elizabeth Kamin, Ludwig Krzyszke, commanding them at a certain day and under a certain penalty, therein to be inserted, personally to be and appear before this honorable court, then and there to answer," etc.

Upon this bill was the following indorsement: "Let an injunction issue as prayed"—signed by the circuit judge.

The writ of injunction was issued against the said Ludwig Krzyszke and the other defendants named in said bill, in the usual form, commanding him and them to absolutely desist and refrain from incumbering his or their property in any way until the further order of the court. Said injunction was served upon this plaintiff on the morning, and at the place, of the proposed sale, and after a large number of persons had assembled, as the plaintiff claims, to bid upon said property; and he gave evidence tending to show that such service of injunction resulted in breaking up the sale, and prevented him from making an advantageous disposition of his said personal property, and especially the hay, which he claims amounted in quantity to about 20 tons. It is undisputed that said in-

junction was dissolved and dismissed as against this plaintiff, by consent of complainant's solicitor in said chancery cause, on the day after it was served, and the suit later dismissed.

Upon the trial of the case, the plaintiff gave evidence tending to show the value of the hay on the day of the proposed sale, and the offers he had received for it; that persons were there ready to purchase, and the circumstances of the occasion; that by reason of the distance from a shipping point, and the bad roads which immediately followed, and notwithstanding his best efforts to sell, he suffered damage in a large sum by being obliged to accept a greatly reduced price for said hay. The jury gave the plaintiff a part only of his claimed damages. The defendant has brought the case here upon writ of error, and the record contains 40 assignments of error. It will not be necessary to consider these assignments separately. They may be classified as follows:

(1) That the court erred in submitting the case to the jury, because plaintiff made no case by his evidence, and the action of malicious prosecution will not lie in such a case.
(2) Alleged errors in the admission of evidence.
(3) Errors alleged in the charge.

Upon the trial of the case in the circuit court, and upon the argument in this court, defendant's attorney claimed that the bill of complaint, by its averments, entitled the complainant therein to an injunction such as was issued against the plaintiff herein, and that the only error was a clerical one, of omitting to name the plaintiff in the prayer for injunction in the body of the bill. In this claim we cannot agree with counsel. An examination of the bill discloses that it did not contain any substantive averment entitling the complainant therein to an injunction restraining the said Ludwig Krzyszke from incumbering his property. The writ of injunction was therefore unauthorized, as to him. This want of authority, however, did not appear upon the face of the writ, and the conduct of this

plaintiff in obeying its mandate was commendable. It must be held, however, that there was no probable cause for the issuance of the writ. That it was issued at the instance of this defendant, acting by his solicitor, is not denied, and clearly appears. This brings us to the consideration of the first point raised by defendant.

1. The right to maintain this action was recently discussed by this court in *Powers* v. *Houghton*, 159 Mich. 372 (123 N. W. 1108). After referring to the English rule and stating that it has been somewhat modified in this country, the opinion quotes from 1 Cooley on Torts (3d Ed.), at page 345, as follows:

"In some cases an action may be maintained for the malicious institution of a civil suit, but the authorities are not entirely agreed what cases are embraced within the rule."

Justice BROOKE says:

"Among those malicious civil suits giving a right of action he (Cooley) enumerates arrest, attachment, garnishment, insanity cases, injunctions, receivers, and other suits that interfere with person or property. Under the last class of cases, he says (page 348):

" 'So a suit for malicious prosecution will lie where the plaintiff's property or business has been interfered with, by the appointment of a receiver, the granting of an injunction, or by writ of replevin. * * *

"In our own State, the case of *Brand* v. *Hinchman*, 68 Mich. 590 (36 N. W. 664, 13 Am. St. Rep. 362), is to some extent applicable. There, an attachment was sworn out by defendant, Hinchman, and placed in the sheriff's hands for service. A deputy visited Brand's store, but made no actual levy, the subject-matter of the suit being adjusted. The court found, however, that there was at least a technical taking and possession of Brand's property, and the proofs showed that damage resulted to his business as a result of the swearing out of the writ (without probable cause). The case of *Antcliff* v. *June*, 81 Mich. 477 (45 N. W. 1019, 10 L. R. A. 621, 21 Am. St. Rep. 533), is authority for the proposition that a gross and fraudulent abuse of the process of the court, resulting in

damage, gives a right of action to the person sustaining the damage."

We need not quote authority to the effect that want of probable cause raises a presumption of malice, in an action for malicious prosecution.

We might properly dismiss this subject here, but there is such an abundance of authority, to the like effect, outside of Michigan, that we refer to some text-writers and decisions. 22 Cyc. p. 1061; 16 Am. & Eng. Enc. Law (2d Ed.), p. 440, and cases cited. In 2 High on Injunctions (4th Ed.), § 1648, the author says:

"Some conflict of authority exists as to whether a defendant in an injunction suit may, by an action on the case, recover damages for having been enjoined without cause, and the rule has been broadly stated that no such right of action exists, and that his only remedy is by suit upon the injunction bond. The better doctrine, however, seems to be that defendant's right of action at common law is not merged in the remedy upon the bond, and that an action on the case will lie. *Cox* v. *Taylor's Adm'r*, 10 B. Mon. (49 Ky.) 17; *Mitchell* v. *Railroad*, 75 Ga. 398. But to support such action, the plaintiff's pleadings must clearly negative the existence of probable cause for the injunction. It will not suffice to allege that the writ was unjustly and wrongfully sued out, but there must be distinct allegations of malice or a want of probable cause" —citing many cases. *Mark* v. *Hyatt*, 135 N. Y. 306 (31 N. E. 1099, 18 L. R. A. 275); *Short* v. *Spragins*, 104 Ga. 628 (30 S. E. 810); *Asevado* v. *Orr*, 100 Cal. 293 (34 Pac. 777).

The last above case holds that an action on the case for damages will not lie for improperly suing out an injunction, unless complainant charges an abuse of a process of the court through malice and without probable cause. If the act complained of is destitute of these ingredients, the only remedy of the party is an action upon the injunction bond.

In 1 Joyce on Injunctions, § 175, it is said:

" Where a party in good faith and on a fair representation of the facts procures a writ or order of injunction, he

is not liable in an action for the damages which the injunction has caused to the person enjoined, unless he has given a bond or other security for the payment of such damages.   In other words, in the absence of such security, the defendant has no remedy for any damages he may sustain from the issuing of the injunction, unless the conduct of the plaintiff has been such as to give ground for an action of malicious prosecution "—citing in the note *Cayuga Bridge Co.* v. *Magee,* 2 Paige (N. Y.), 116–122.

" Where a party in good faith, and on a fair presentation of the facts to a court, or to a judicial officer, procures a writ or order of injunction, he is not liable in an action for the damages which the injunction has caused to the person enjoined.   Such is the rule as to any process or order in the nature of process thus procured.   Where process sued out by a party is afterwards set aside for error, the party is not liable in an action for damages; where it has been set aside for irregularity or bad faith in obtaining it, he may be." *Palmer* v. *Foley,* 71 N. Y. 106— citing *Williams* v. *Smith,* 108 Eng. Com. Law Rep. (14 Com. Bench [N. S.], 596) 594.

See, also, *Miller* v. *Adams,* 52 N. Y. 409; *Carl* v. *Ayers,* 53 N. Y. 14.

In *Miller* v. *Adams, supra,* which was an action for false imprisonment, it was held that one who applies to a judge to issue an attachment for the arrest of another, and who receives and delivers it to the sheriff for service, is liable for the arrest in case the attachment is void for want of jurisdiction in the judge, or for any other cause. Grover, J., said:

" Plaintiff claims that the judge had not acquired jurisdiction of the subject-matter, and had no authority to issue the attachment, and that, therefore, his arrest and detention thereon was wrongful, for the redress of which he can maintain this action.   If he is right in the premises, he clearly is in the conclusion, both upon principle and authority.   The question is whether the judge had jurisdiction to issue the attachment.   Before examining this question, it may be well to consider the point made by the defendant's counsel that, conceding that the judge had no jurisdiction to issue the attachment, still the defendant is not liable for the arrest of the plaintiff thereon, upon the ground that a party applying to a court, or judicial officer,

having jurisdiction of the subject-matter presenting his case to such court, or officer, is not responsible for the action taken thereon by such court, or officer. Counsel cites *Von Latham* v. *Libby*, 38 Barb. [N. Y.] 339, to sustain this position. The principle upon which that case was decided has no application to the facts of the present case. There, all that was done by the defendant was to present the case for the action of the magistrate. Here, the attorney of the defendant applied to the judge to issue the attachment, and delivered it to the sheriff for service. This clearly made the defendant liable in case the attachment was void for want of jurisdiction in the judge, or for any other cause."

In *Mark* v. *Hyatt*, 135 N. Y. 306 (31 N. E. 1099, 18 L. R. A. 275), the court said:

" No action of trespass will lie to recover the damages unless the prosecution is alleged and proved to have been malicious and without probable cause. We have held that doctrine quite firmly and clearly, in cases of injunctions, declaring in substance that, although the restraining order ought not to have been granted, and was set aside for that reason, yet the damages incurred where the proceedings have been regular, cannot be recovered in the absence of an undertaking, except upon the basis of malicious prosecution "— citing *Lawton* v. *Green*, 64 N. Y. 326; *Palmer* v. *Foley*, 71 N. Y. 106.

In *Cox* v. *Taylor's Adm'r*, 10 B. Mon. (Ky.) 17, the court says, at page 20 :

"And the principle is the same, whether the malicious proceeding be a criminal prosecution or a civil suit. In either case the wrong consists not merely in the falsity and consequent injustice of the charge or claim, but in its being made by legal proceeding without probable cause, and, therefore, as the law decides, from malicious motives alone. This want of probable cause, being the essential ground of the action, must be alleged and proved in order to sustain it. If there be probable cause, though the charge or claim be false, and therefore unjust or wrongful, the most express malice will not be sufficient. Therefore the allegation that the party had maliciously, or falsely, or unjustly, or wrongfully, instituted the former proceeding, will not supply the want of the allegation that he did it without probable cause; which, although it need

not be stated in these express words, must be stated in some form of substantive averments, or must at least be shown clearly in the declaration."

*Newark Coal Co.* v. *Upson*, 40 Ohio St. 17. The Newark Coal Company, a corporation, with malice, and without probable cause, sued one Upson and others in a civil action, and, by the order of injunction made on its *ex parte* application, prevented Upson and others from entering upon and enjoying their property, and also from prosecuting a profitable business. After a year had passed the Newark Coal Company dismissed its action. Upson and others thereupon sued the company claiming damages for said malicious prosecution.

(1) It was held that they could maintain the action.

(2) That the measure of damages is the value of the right of Upson and others to possess their property and prosecute their business during said period of ouster and suspension, *i. e.*, the value of the use of the property in the business, during that time.

Granger, C. J., said:

"It may now be considered the approved doctrine that an action for the malicious prosecution of a civil suit may be maintained, whenever, by virtue of any order, or writ, issued in the malicious suit, the defendant in that suit has been deprived of his personal liberty, or of the possession, use, or enjoyment, of property of value. The name or form of the writ or process is immaterial. It may be an order of arrest, or of attachment, or of injunction. The malicious prosecutor cannot shield himself behind the interlocutory order of the judge, based upon his own malicious *ex parte* application and affidavit." *Newark Coal Co.* v. *Upson, supra.*

See, also, *Mitchell* v. *Railroad*, 75 Ga. 398.

2. We have carefully examined the assignments of error relating to the admission of evidence. Bearing in mind the nature of the case and the difficulty in arriving at the exact amount of damages suffered, all the facts and circumstances of the case, having any tendency to show damages, or their probable amount, should be placed be-

fore the jury, so as to enable them to make the most intelligible and probable estimate which the nature of the case will permit. *Allison* v. *Chandler*, 11 Mich. 542. Note the liberal rule adopted in the admission of testimony in *Brand* v. *Hinchman, supra*. We find no error of which defendant should complain in the rulings of the circuit court in the admission or rejection of testimony.

3. Was there error in the charge of the court ? Bearing in mind that there was entire want of probable cause in the issuance and service of the writ of injunction, and the correlative rule that want of probable cause, in itself, raises a presumption of malice, under the law, and that there was no evidence to rebut that presumption, we do not think there was error in charging the jury that the only question to be considered was one of damages. The following excerpt from the charge indicates its tenor :

" It appears that this injunction was served upon him (the plaintiff) and prevented him from selling the property. There is nothing in the bill of complaint which warranted any injunction against this plaintiff, such as this injunction purports to be, and for that reason I say to you that the only question is: Did the plaintiff suffer damages by reason of the service of this injunction, and, if so, what was the damage ? The burden is upon the plaintiff to show by a preponderance of the evidence that he suffered damage. If he fails to show that he suffered damage, he is only entitled to a nominal verdict at your hands of six cents. If he has established that he has suffered damages, it is your duty to assess the damages, and find a verdict in his behalf for the amount you assess. Now, gentlemen of the jury, the measure of damages is the difference between what he was able to obtain for the goods which he was prevented from selling, at the time and place of this sale of March 25, 1908—the difference between what he was able to realize on that sale at the time and place, and what he could have acquired for that stuff by the exercise of reasonable diligence on his part, after the injunction was dissolved. This injunction was served on him on the morning of March 25, 1908, and the next day in the afternoon, after the close of court, or thereabouts, or at the close of court's business, by mutual agreement, the injunction was dissolved, and he was re-

lieved from the restraint upon his power to sell the property. The property involved is hay in the mow as disclosed by the testimony, and the potatoes."

Complaint is made because the court here referred to the potatoes as being involved in the suit. There is no evidence of any damage as to the potatoes. They were included in the declaration, and there was some evidence as to the quantity. In the entire remainder of the charge the jury's attention is directed solely to the claimed damages on the hay. We do not think that the jury were misled by this reference, and we find no error in the charge.

Some claim was made that there was error in awarding costs to the plaintiff; but as the recovery was $100 damages, and as a justice of the peace has no jurisdiction in a case of malicious prosecution, and in view of section 11257, 3 Comp. Laws, we do not discuss the claim.

The judgment of the circuit court is affirmed.

BIRD, C. J., and OSTRANDER, BROOKE, and BLAIR, JJ., concurred.