R.J.R. SERVICES, INC., individually, and d/b/a Ron Russell and Associates, and Ronald J. Russell, Plaintiffs–Appellants,

v.

AETNA CASUALTY AND SURETY COMPANY, et al., Defendants–Appellees.

No. 88–1540.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 28, 1988.

Decided Feb. 16, 1989.

Michael Baird, Stotis, Chionis Craven & Baird, Chicago, Ill., for plaintiffs-appellants.

Jean Faulhaber, Tressler Soderstrom Maloney & Priess, Chicago, Ill., for defendants-appellees.

Before CUDAHY, POSNER, and EASTERBROOK, Circuit Judges.

CUDAHY, Circuit Judge.

Plaintiffs-appellants R.J.R. Services, Inc., doing business as Ron Russell and Associates, and Ronald J. Russell (collectively "Russell") commenced this diversity suit against a group of insurance companies (collectively "Aetna"),[1] alleging that Aetna committed the torts of malicious prosecution and abuse of process by filing a prior action against the plaintiffs in Michigan state court. Pursuant to Aetna's motion, the district court dismissed the action for failure to state a claim upon which relief could be granted. We affirm.

## I.

This matter arises out of a fire which damaged several commercial buildings in Iron Mountain, Michigan in February of 1982. The owners of those buildings that were insured against fire loss received certain sums from their respective insurance companies, including Aetna. One of the buildings, the Ace Drug Building, was insured by C.N.A. Insurance Company ("CNA"), which retained the fire investigative firm of Ron Russell and Associates to ascertain the cause and origin of the fire. Subsequently, Aetna, through its attorney

James A. Morrison, instituted an action against Renee Savoie, the owner of the Ace Drug Building, alleging that Mr. Savoie was responsible for the fire. CNA assumed the defense of the suit pursuant to its insurance policy with Mr. Savoie.

On February 6, 1985, after the litigation had been pending for more than a year, Morrison wrote to CNA requesting payment of $423,085 to settle the action. The letter threatened that if settlement could not be obtained soon, Aetna might add Russell as a defendant in the Michigan action for committing fraud and tortiously interfering with property rights while conducting the fire investigation. Shortly thereafter, on February 11, 1985, Aetna filed the threatened suit alleging, *inter alia*, that Russell had fraudulently removed and altered physical evidence necessary to the fire investigation.

The parties to the Michigan action eventually reached a settlement agreement in which CNA agreed to pay Aetna $160,000. Pursuant to this agreement, Morrison, on behalf of Aetna, released all claims (including those claims against Russell). Additionally, Morrison and counsel for Russell executed a stipulation and order of dismissal with prejudice.

Thereafter, Russell commenced this lawsuit charging Aetna with malicious prosecution and abuse of process in connection with the Michigan action. The district court dismissed the action on the merits in accordance with Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim under Michigan law. We affirm.

## II.

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, we, of course, accept as true all well-pleaded factual allegations and inferences reason-

---

1. The defendant insurance companies include Aetna Casualty and Surety Company, Auto Owners Insurance Company, Michigan Mutual Insurance Company, Transamerican Insurance Company, U.S. Fire Insurance Company Group, Western Casualty and Surety Company and Aetna Insurance Company (now CIGNA Property and Casualty Insurance Company). Originally, Russell had also named Aetna's attorney, James A. Morrison, and his law firm, Jabas and Morrison, as defendants. The district court dismissed the latter defendants for lack of personal jurisdiction, however, and the appeal of this order was dismissed with prejudice by stipulation of the parties.

ably drawn from those facts. *Kush v. American States Ins. Co.*, 853 F.2d 1380, 1382 (7th Cir.1988) (citing *Forys v. United Food & Commercial Worker's Int'l Union*, 829 F.2d 603, 604 (7th Cir.1987)). However, we are not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law. *Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir.1988) (citations omitted). Dismissal is proper if it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to the relief requested. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Dunn v. Peabody Coal Co.*, 855 F.2d 426, 427 (7th Cir. 1988) (citing *Pryzina v. Ley*, 813 F.2d 821, 822 (7th Cir.1987) (per curiam) (citing *Fromm v. Rosewell*, 771 F.2d 1089, 1091 (7th Cir.1985), *cert. denied*, 475 U.S. 1012, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986))). If the complaint fails to allege a requisite element necessary to obtain relief, dismissal is in order. *See Powe v. City of Chicago*, 664 F.2d 639 (7th Cir.1981); *Cannon v. Univ. of Chicago*, 648 F.2d 1104 (7th Cir.), *cert. denied*, 454 U.S. 1128, 102 S.Ct. 981, 71 L.Ed.2d 117 (1981); 2A J. Moore, *Moore's Federal Practice* ¶ 12.07[2.–5], at 12–68 & n. 19 (2d ed. 1987). In the instant case, Russell contends that the court below relied improperly on facts beyond the pleadings in deciding to dismiss pursuant to Rule 12(b)(6).[2] Indeed, if matters outside the pleadings are presented to and considered by the court in connection with

a motion to dismiss, the district court is required to treat the motion to dismiss as a summary judgment motion. *Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir. 1988) (citing *National Family Ins. Co. v. Exchange Nat'l Bank*, 474 F.2d 237, 239 (7th Cir.), *cert. denied*, 414 U.S. 825, 94 S.Ct. 129, 38 L.Ed.2d 59 (1973); Fed.R. Civ.P. 12(b)). Failure to make this conversion and to provide litigants with appropriate notice to permit supplementation of the record can constitute reversible error. *Id.* (citing *Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972)). A dismissal without the proper conversion, however, may be approved if the standards for a Rule 12(b)(6) dismissal are met without reference to the extrinsic material. 2A J. Moore, *Moore's Federal Practice* ¶ 12.09[3] at 12–82 n. 8 (citing *Medina v. Rudman*, 545 F.2d 244 (1st Cir. 1976), *cert. denied*, 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 177 (1977); *O'Brien v. DiGrazia*, 544 F.2d 543 (1st Cir.1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977); *Gordon v. Nat'l Youth Work Alliance*, 675 F.2d 356 (D.C.Cir. 1982)). Therefore, even if the court below relied improperly on facts beyond the pleadings (which is not altogether clear), we can affirm the court's order because the face of the complaint itself meets the standards for dismissal under Rule 12(b)(6).[3]

## A. Malicious Prosecution

The parties agree apparently with the district court's determination that Michigan

---

**2.** Aetna argues that Russell has waived this argument by affirmatively submitting extraneous materials to the district court and acquiescing in the court's consideration of them. While this seems a plausible argument, we need not pursue it here.

**3.** As we noted in *Beam v. IPCO Corp.*, 838 F.2d 242:

> Our determination to review this case as a grant of a motion to dismiss affects only the form of this decision. We would reach the same outcome based on very similar reasoning if we treated this as a case in which the motion to dismiss was effectively converted into a summary judgment motion without proper notice to the parties. While notice that a motion to dismiss has been converted to a summary judgment motion should be

given, we have held that "the failure to do so does not necessarily mandate reversal where nothing else could have been raised to alter the entry of summary judgment." [citations omitted]. In light of our conclusion that Beam's complaint does not rely on a valid legal theory, it is clear that further development of the facts would not have helped Beam.

*Id.* at n. 2. *Cf. Chicago–Midwest Meat Ass'n v. City of Evanston*, 589 F.2d 278, 281–82 (7th Cir.1978), *cert. denied*, 442 U.S. 946, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979). Similarly, Russell has not established that further development of the facts in this instance would have sufficiently supported Russell's malicious prosecution and abuse of process claims.

law applies to Russell's claims.[4] Under Michigan law, the essential elements of a malicious prosecution action include: (1) termination of the prior proceedings in favor of the present plaintiff; (2) absence of probable cause for the prior proceeding; (3) malice, defined as a purpose other than that of securing the proper adjudication of the claim; and (4) a special injury that flows directly from the prior proceedings. *Kauffman v. Shefman*, 169 Mich.App. 829, 426 N.W.2d 819, 821 (1988) (citing *Young v. Motor City Apartments Ltd.*, 133 Mich. App. 671, 675, 350 N.W.2d 790 (1984) (citing *Friedman v. Dozorc*, 412 Mich. 1, 48, 312 N.W.2d 585 (1981))).

▪ Recently, Michigan courts have reaffirmed their adherence to the above-noted "special injury" requirement—otherwise called the "English Rule." Although the precise definition of "special injury" is an enigma, the Michigan Supreme Court has instructed that an action for malicious prosecution will not lie absent a showing of "special injury equivalent to a seizure of property as a result of the defendant's institution of civil proceedings." *Friedman*, 412 Mich. at 40–41, 312 N.W.2d at 598–99; *see also Sage Int'l, Ltd. v. Cadillac Gage Co.*, 556 F.Supp. 381, 384 (E.D. Mich.1982) (citing *Brand v. Hinchman*, 68 Mich. 590, 36 N.W. 664 (1888) (where a writ of attachment was ordered by court, but not levied upon, and deputies remained in store for half hour, there was "technical seizure" of property); *Leeseberg v. Builders Plumbing Supply Co.*, 6 Mich.App. 321, 149 N.W.2d 263, *leave denied*, 379 Mich. 768 (1967) (writ of attachment caused plaintiff's warehouse to be locked for two weeks); *Rowbotham v. Detroit Auto. Inter–Ins. Exchange*, 69 Mich.App. 142, 147,

244 N.W.2d 389 (1976) (defendant filed an improper certificate of unsatisfied judgment with the state motor vehicle department, causing an unjustified suspension of driver's license); *Krzyszke v. Kamin*, 163 Mich. 290, 128 N.W. 190 (1910) (injunction restrained plaintiff from disposing of his personal property at auction)). Russell contends that special injury was adequately pleaded in its Second Amended Complaint, which states that as "a direct and proximate result of the filing and the institution of [the Michigan] suit, the Plaintiffs herein were caused special damages, including but not limited to severe financial loss, loss of business, loss of earnings, loss of clientele and loss of good will and standing within their business community." Appellants' App. at 3. According to Russell, this averment satisfies the liberal pleading standards of the Federal Rules of Civil Procedure. As Wright and Miller point out, however,

> [t]here is one significant exception to the general rule that the complaint will be construed liberally on a Rule 12(b)(6) motion. When the claim alleged is a traditionally disfavored "cause of action," such as malicious prosecution, ... the courts tend to construe the complaint by a somewhat stricter standard and are more inclined to grant a Rule 12(b)(6) motion to dismiss.

5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 610 (1969). The antipathy of the Michigan courts toward malicious prosecution claims is evidenced by their demanding pleading requirements, especially with respect to the requirement of special injury. Michigan courts have persistently refused to abrogate the some-

---

**4.** In a diversity action, a federal court must apply the choice-of-law principles of the state in which it sits to determine which state's substantive law governs. *French v. Beatrice Foods, Co.*, 854 F.2d 964, 966 (7th Cir.1988) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). In tort actions, Illinois courts embrace a "most significant contacts" test, which presumes that the law of the state where the injury occurred governs unless another state has a more significant relationship to the occurrence or the parties involved. *Id.* (citing *Ingersoll v. Klein*, 46 Ill.2d

42, 45, 262 N.E.2d 593, 595 (1970)); *Pittway Corp. v. Lockheed Aircraft Corp.*, 641 F.2d 524, 526 (7th Cir.1981). Here, the fire which precipitated this entire dispute occurred in Michigan. The predicate lawsuit underlying Russell's claims of malicious prosecution and abuse of process was filed, litigated and dismissed in Michigan. The only relationship Illinois has with this case is that it is the residence of Russell and principal place of business of Ron Russell and Associates. Michigan is indisputably the state with the most significant relationship.

what arcane special injury requirement despite authority elsewhere to the contrary. In *Friedman,* the Michigan Supreme Court expressed its jaundiced attitude toward malicious prosecution claims, stating:

> The cure for an excess of litigation is not more litigation. Meritorious as well as frivolous claims are likely to be deterred. There are sure to be those who would use the courts and such an expanded tort remedy as a retaliatory or punitive device without regard to the likelihood of recovery or who would seek a means of recovering the actual cost of defending the first action without regard to whether it was truly vexatious.

412 Mich. 42, 46, 312 N.W.2d at 601. Accordingly, the court concluded that retention of the special injury requirement was necessary in order to limit the circumstances in which malicious prosecution actions can be maintained. *Id.*

These principles were acknowledged in *Sage International, Ltd. v. Cadillac Gage Co.,* 556 F.Supp. 381, 384–85 (E.D.Mich. 1982), which involved an averment of "special injury" closely resembling that in the present case. The plaintiffs in *Sage International* alleged that they were prevented from continuing with their usual business and trade; suffered damage to reputation and good will; suffered substantial expenses in defending the prior lawsuit; lost income, profits and business; and that the individual plaintiffs lost their employment. *See id.* at 385. The court held that these allegations of special injury did not satisfy the " 'technical' or 'constructive taking' " requirement of *Friedman.* *Id.* at 385. The court opined:

> The allegations that a suit was brought solely to "ruin" someone's business or reputation is an exceedingly subjective assertion which any litigant could pose and which could be verified or disproven only upon a trial of the issue. It is presumably for this reason that courts recognizing the special injury prerequisite demand that some "objective" equivalent of a taking be alleged or ... that some "provisional remedy" is alleged to have been utilized against plaintiff. Without such criterion, the stringent special injury rule, which the *Friedman* court has so carefully engrafted upon this cause of action, could be swallowed up by an allegation that the defendant "was out to ruin me." I do not believe that this was a result intended by the court in *Friedman.*

*Id.* at 387 (citation omitted).

The Michigan Court of Appeals has provided the most recent elucidation of the special injury rule in *Kauffman v. Shefman,* 169 Mich.App. 829, 426 N.W.2d 819 (1988), which reiterates the *Friedman* policy of adherence to a strict special injury requirement: "to refrain from intimidating those seeking to adjudicate their claims in the courts." *Id.* 426 N.W.2d at 823. In *Kauffman,* the plaintiffs contended that the burden of a lis pendens and the onus of being compelled to defend successive suits amounted to special injury—specifically, interference with their person and property, damage to their credit rating and reputation and physical and mental anguish. The court explained that the restrictive "English Rule" permits a malicious prosecution action only where one of three types of injury has been sustained: injury to fame, injury to person or liberty, or injury to property. *Id.* at 822. The court concluded that the filing of a lis pendens does not prohibit alienation and, thus, is not a special injury equivalent to a seizure of property. *Id.* With respect to the burden of defending successive suits, the court noted the difficulty in applying the seizure-of-property standard announced in *Friedman* to a case involving injury to persons. *Id.* 426 N.W.2d at 824. For guidance, the court adverted to the principles articulated in *Barnard v. Hartman,* 130 Mich.App. 692, 695, 344 N.W.2d 53 (1983): "a malicious prosecution plaintiff must suffer 'some injury which would not necessarily occur in all suits prosecuted for similar causes of action.' " *Kauffman,* 426 N.W.2d at 824. The *Kauffman* court then concluded that a succession of suits in some limited instances might constitute a special injury which would not necessarily occur in similar litigation; but *Kauffman*

was not such a case.[5]

Russell has failed to effectively distinguish this case from others that decline to find "special injury." In an effort at such a distinction, Russell submits that the filing of a fraud suit against a fire investigative firm, which often provides court testimony, results in extraordinary damages going beyond those normally involved in defending a lawsuit. But this argument misconstrues the relevant inquiry: whether the alleged damages would normally arise in defending a *similar* lawsuit, namely, a lawsuit claiming fraud. We fail to see a relevant distinction between the present circumstances and those of *Friedman,* which involved severe damage to a doctor's professional reputation resulting from a medical malpractice action, or of *Barnard v. Hartman,* 130 Mich.App. 692, 344 N.W.2d 53, which concerned damage to reputation suffered by a court reporter charged with intentionally preparing a false and misleading transcript. Similarly, in *Young v. Motor City Apartments Ltd.,* 133 Mich.App. 671, 350 N.W.2d 790 (1984), where a legal malpractice and fraud suit caused attorneys to suffer, *inter alia,* lost profits from the closing of a section of their business and injury to their reputation and goodwill, there was no "special injury." *See also Early Detection Center v. New York Life Ins. Co.,* 157 Mich.App. 618, 403 N.W.2d 830 (1987). Therefore, since Russell's Second Amended Complaint fails to allege a cognizable special injury resulting from the Michigan suit, the dismissal for failure to state a claim was correct.

The district court also concluded that Russell's malicious prosecution claim was deficient for failure to allege the favorable termination of the prior Michigan suit. Michigan case law holds that a settlement or compromise does not satisfy the "favorable termination" requirement of a malicious prosecution claim. *See Kauffman,* 426 N.W.2d at 825 (citing *Brand v. Hinchman,* 68 Mich. 598, 36 N.W. 664). The face of the Second Amended Complaint alleges that the Michigan action was "dismissed in favor of the Plaintiff." *See* Appellants' App. at 3. Yet the memoranda and exhibits accompanying the motion to dismiss indicate that the action was settled for an agreed sum paid by CNA, that Aetna released all claims (including those against Russell) and that a stipulation and order of dismissal was entered. *See id.* at 28, 47, and Exhibit C. Russell argues that the district court improperly looked beyond the face of the complaint in finding that the Michigan action was settled "by or in behalf of" Russell. *See R.J.R. Services, Inc. v. Aetna,* 87 C 8171, mem. order at 4 (N.D. Ill. Feb. 17, 1988).[6] Russell contends that, because it did not actually contribute any funds to the settlement, the Michigan action was not settled on its behalf as the district court concluded. Russell argues further, without citing any controlling authority, that the stipulation and dismissal

**5.** The court maintained:

A party who reasonably expects to have obtained his peace with another from the outcome of an initial lawsuit brought by the other suffers a special injury where he is forced a second time to litigate the same dispute, or another dispute contrived for some improper purpose. *See* 3 Restatement Torts, 2d, § 679, p. 466. The normal result of a lawsuit is the resolution of the issues between the parties. Where a party does not accept that resolution and uses legal proceedings to harass another, he imposes on the other a burden greater than that normally flowing from such proceedings. Moreover, the party instituting a succession of improper lawsuits does so in contravention of the policy to limit litigation expressed in *Friedman, supra.* Recognizing that a succession of suits might constitute a special injury in limited instances will act in furtherance of this policy.

426 N.W.2d at 824.

**6.** Unlike exhibits and affidavits, memoranda of points and authorities are generally not characterized as matters outside the pleadings. *Milwaukee Typographical Union No. 23 v. Newspapers, Inc.,* 639 F.2d 386, 391 (7th Cir.), *cert. denied,* 454 U.S. 838, 102 S.Ct. 144, 70 L.Ed.2d 119 (1981). Nonetheless, we have previously intimated that assertions contained only in the briefs accompanying a motion to dismiss may not be used to expand the allegations of the complaint. *See Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985); *cf. Runnemede Owners, Inc. v. Crest Mortgage Corp.,* 861 F.2d 1053, 1057 (7th Cir. 1988).

with prejudice constitutes a favorable termination. To the contrary, Michigan case law suggests that a dismissal is not a favorable termination. *See Kauffman*, 426 N.W.2d at 825. But because the complaint is also deficient in failing to allege special injury, we need not now resolve the "favorable termination" question.

### B. *Abuse of Process*

■ Similarly, Russell's complaint fails to adequately plead the prerequisites for an abuse of process claim under Michigan law. To recover on an abuse of process theory, a plaintiff must plead and prove (1) an ulterior, collateral purpose; and (2) an act in the use of process which is improper in the regular prosecution of the proceeding. *See Friedman*, 412 Mich. 1, 312 N.W.2d at 594 (citing *Spear v. Pendill*, 164 Mich. 620, 623, 130 N.W. 343 (1911)). In this connection, the plaintiffs' Second Amended Complaint alleges that the Michigan suit "was instituted in bad faith, and not for the purpose of maintaining a cause of action against the Plaintiffs herein." Appellants' App. at 3. In the plaintiffs' Response to the Defendants' Motion to Dismiss, Russell states more specifically that the "Michigan action was brought for the collateral purpose of coercing CNA into a settlement of the underlying cause." *Id.* at 28. Curiously, the district court dismissed the abuse of process claim without discussion; hence, it is unclear upon which grounds the court found the complaint to be facially deficient. Nevertheless, we need not address the sufficiency of the collateral purpose averment, or the propriety of looking beyond the face of the complaint to ascertain the specific collateral purpose, for the abuse of process claim was correctly dismissed for failure to plead an independent act in the use of process—a critical component of an abuse of process claim.

In *Sage International*, the court held that a bald allegation that the prior suit was "commenced and prosecuted" for an ulterior purpose cannot, without more, satisfy the independent act requisite of an abuse of process action. 556 F.Supp. at 389. Rather, the plaintiff "must allege with some specificity an act in the course of process which itself evidences the ulterior purpose, and such an act may not be inferred from an improper motive." *Id.* The Michigan Supreme Court in *Friedman* clarified this principle as follows:

> The only act in the use of process that plaintiff alleges is the issuance of a summons and complaint in the former malpractice action. However, a summons and complaint are properly employed when used to institute a civil action, and thus plaintiff has failed to satisfy the second element required in *Spear*, where the Court observed " '[t]his action for abuse of process lies for the improper use of process after it has been issued, not for maliciously causing it to issue.' "

312 N.W.2d at 595 (citation omitted).

Russell relies primarily upon *Three Lakes Association v. Whiting*, 75 Mich. App. 564, 255 N.W.2d 686 (1977), where the court found that the plaintiff had sufficiently stated a cause of action for abuse of process. There, the court held that the specific allegation that the defendants offered to dismiss a prior action in return for an end to all opposition by plaintiff to their condominium project was a sufficient claim of an independent act in the use of process. In effect, the defendants had used the prior action as a club to obtain an improper collateral objective. *Id.* 255 N.W.2d at 690–91. In addition to the settlement offer, the improper independent acts alleged in *Three Lakes* included the abuse of the discovery process, the refusal to abide by an agreement to settle the case and the oppressive manner of conducting the lawsuit. *See id.* 255 N.W.2d at 689. Here the complaint omits any allegation of an independent act and is therefore distinguishable from *Three Lakes*. Instead, we rely on *Young v. Motor City Apartments Ltd.*, 133 Mich.App. 671, 350 N.W.2d 790 (1984), in which the court held that

> process which properly issues and that prompts the case toward the resolution

of the claims therein is not an abuse of process absent allegations of a specific act in the course of process that reveals a collateral, ulterior purpose.

*Id.* 350 N.W.2d at 796.[7] *See also Pillette Indus., Inc. v. Alexander,* 17 Mich.App. 226, 169 N.W.2d 149 n. 150 (1969) (regular use of process with bad intention is not an abuse of process); *Early Detection Center v. New York Life Ins. Co.,* 157 Mich.App. 618, 403 N.W.2d 830 (abuse of process claim fails because no irregular act alleged other than the filing of a groundless suit); *Rowbotham v. Detroit Auto. Inter–Ins. Exchange,* 69 Mich.App. 142, 244 N.W.2d 389 (1976) (no abuse of process to coerce debt collection by causing the suspension of license because there was no legitimate process to be abused). Therefore, bereft of any allegation of an independent act by Aetna in the use of process, Russell's complaint is fatally deficient.

### III.

In sum, we conclude that Aetna's Rule 12(b)(6) motion to dismiss for failure to state a claim was properly granted. Russell's Second Amended Complaint fails to sufficiently plead "special injury" in connection with the malicious prosecution claim and an "independent act" relating to the abuse of process claim. Accordingly, the decision below is

AFFIRMED.

---

**7.** In *Young,* the plaintiffs alleged that the defendants' motive in filing the prior action was to coerce payment from the plaintiffs and their insurance carrier of claims made in a prior action. 350 N.W.2d at 794. The court stated that this purpose "describes nothing more than objectives commonly sought by claimants who initiate lawsuits." *Id.* at 795.