THREE LAKES ASSOCIATION v WHITING

1. JUDGMENT—MOTIONS—SUMMARY JUDGMENT—LEGAL SUFFICIENCY
   —PLEADING—RIGHT TO RECOVERY—COURT RULES.

   A motion for summary judgment grounded on the failure to state
   a claim challenges only the legal sufficiency of the claim and is
   to be tested by the pleadings alone; for such purposes all well-
   pled allegations and reasonable conclusions from them must be
   accepted as true and dismissal is appropriate only when the
   plaintiff's claim, on the pleadings, is so clearly unenforceable as
   a matter of law that no factual development can possibly
   justify a right to recovery (GCR 1963, 117.2[1]).

2. PLEADING—MALICIOUS PROSECUTION—PROCESS—ABUSE OF PROCESS
   —SUMMARY JUDGMENT—PROCESS AS THREAT OR CLUB—OFFER
   TO DISMISS.

   An action for abuse of process is sufficiently stated to withstand a
   motion for summary judgment where the plaintiff charges the
   defendant with instituting an action for damages against him
   with the malicious and ulterior purpose of causing so much
   trouble and expense in defending that action that the plaintiff
   would be forced to give up or at least be frustrated in pursuing
   its legitimate activities in opposition to the defendant's building
   project and where the use of the process as a threat or a club

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Summary Judgment § 29.
[2] 1 Am Jur 2d, Abuse of Process § 1 *et seq.*
[3] 1 Am Jur 2d, Abuse of Process § 2.
[4] 1 Am Jur 2d, Abuse of Process § 22.
[5] 1 Am Jur 2d, Abuse of Process § 1.
[6] 5 Am Jur 2d, Appeal and Error § 545.
[7] 61 Am Jur 2d, Pollution Control §§ 126, 146.
[8, 9] 1 Am Jur 2d, Actions §§ 62, 73.
[10] 1 Am Jur 2d, Actions § 91.
[11] 72 Am Jur 2d, States, Territories and Dependencies § 20.
[12] 5 Am Jur 2d, Appeal and Error § 546.
[13] 77 Am Jur 2d, Venue § 77.
   Construction and effect of statutory provision for change of venue
      for the promotion of the convenience of witnesses and the ends of
      justice. 74 ALR2d 16.

may be inferred from the pleadings wherein it is alleged that the defendants stated that they would dismiss their action without receiving any damages if the plaintiff would agree to end all opposition, legitimate or otherwise, to the defendant's project.

3. MALICIOUS PROSECUTION—ELEMENTS—ULTERIOR PURPOSE—IMPROPER ACT.

The two elements necessary to an action for the malicious abuse of process are (1) the existence of an ulterior purpose, and (2) an act in the use of the process not proper in the regular prosecution of the proceeding; the regular and legitimate use of process, though with a bad intention, is not a malicious abuse of process.

4. MALICIOUS PROSECUTION—ABUSE OF PROCESS—IMPROPER ACT—LIABILITY—BAD INTENTIONS.

The improper act in the use of process which must be proved or alleged in an action for the abuse of process is some definite act or threat not authorized by the process, or an act or threat aimed at an object not legitimate in the use of the process; there is no liability where the party has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.

5. MALICIOUS PROSECUTION—ABUSE OF PROCESS—ACTUAL DAMAGE—ULTERIOR PURPOSE.

Some actual damage is necessary to the tort of abuse of process; a complaint states a cause of action for abuse of process where it alleges actual damages even though it does not allege that the ulterior purpose sought to be obtained through such abuse of process was actually accomplished.

6. APPEAL AND ERROR—ISSUES NOT HEARD IN LOWER COURT.

A claim may not be reviewed for the first time on appeal where it was not the subject of a ruling by the court below.

7. ACTION—RIGHT OF ACTION—NATIONAL ENVIRONMENTAL POLICY ACT OF 1969—PRIVATE RIGHTS OF ACTION—UNITED STATES CODE.

The National Environmental Policy Act of 1969 does not create a private right of action for damages under the act (42 USCA 4321, *et seq.*).

8. CONSTITUTIONAL LAW—ACTION—CIVIL ACTIONS—ELEMENTS—STATE ACTION—UNITED STATES CODE.

Two elements are necessary for recovery under the act that

provides a civil action for the deprivation of constitutional rights: (1) the plaintiff must prove that the defendant has deprived him of a right secured by the constitution and laws of the United States, and (2) the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory", or in other words "under color of law" (42 USCA 1983).

9. ACTION—STATE ACTION—LICENSING OF ATTORNEYS—CIVIL ACTIONS —CONSTITUTIONAL RIGHTS—UNITED STATES CODE.

The mere fact that attorneys are licensed by the state does not render their actions, nor those of their clients, to be state actions within the meaning of the act that provides a civil action for the deprivation of constitutional rights (42 USCA 1983).

10. ACTION—STATE ACTION—LAWSUIT IN STATE COURTS.

The mere institution and pendency of a lawsuit in a state court by private parties is not state action; holding the courts in a state open for the litigation of complaints does not clothe the persons who use the state's judicial processes with the authority of the state.

11. ACTION—STATE ACTION—LICENSES—PERMITS—INTENSIVE REGULATIONS.

The issuance of licenses and permits, and even intensive regulation, by the state does not render action taken by the licensee to be state action absent significant involvement of the state in conduct which is the subject of a complaint.

12. APPEAL AND ERROR—NEW THEORIES ON APPEAL.

A plaintiff may not shift ground and come up with new theories on appeal after being unsuccessful on the theories presented in the trial court.

13. VENUE—MOTIONS—COURT'S DISCRETION—ABUSE OF DISCRETION— COURT RULES.

A motion to change venue is primarily within the discretion of the judge hearing the motion and may be granted for the convenience of the parties and witnesses where no abuse of discretion is shown (GCR 1963, 403).

Appeal from Antrim, William R. Brown, J. Submitted January 11, 1977, at Lansing. (Docket No. 23615.) Decided May 16, 1977.

Complaint by Three Lakes Association against Helen D. Whiting, Macauley Whiting, Robert G. Edgar, Robert D. Welchli, John G. Apfel, Russell W. Redfern and Ware Real Estate Corporation for damages for abuse of process and for violations of Federal and state civil rights. Summary judgment for defendants. Plaintiff appeals. Affirmed in part, reversed in part.

*Jaffe, Snider, Raitt, Garratt & Heuer, P. C.,* for plaintiff.

*Gemuend, Barbier & Goulet, P. C.,* and *Chris M. Youngjohn,* for defendants.

Before: D. E. HOLBROOK, JR., P. J., and V. J. BRENNAN and BRONSON, JJ.

BRONSON, J. Plaintiff appeals by right from a March 6, 1975, order of the Antrim County Circuit Court granting summary judgment in favor of defendants.

According to allegations contained in plaintiff's complaint, plaintiff is a Michigan non-profit corporation, primarily composed of individuals having ownership interests in riparian property situated on Torch Lake in Antrim County, Michigan. The individual defendants are alleged to be shareholders, directors, and officers of the defendant real estate corporation.

Plaintiff initiated this action in Wayne County Circuit Court on August 6, 1974. Pursuant to motion by defendants, summary judgment was entered against plaintiff for failure to state a claim upon which relief could be granted, GCR 1963, 117.2(1), with leave granted plaintiff to file an amended complaint. At the same time, venue of the case was ordered changed to Antrim County.

Plaintiff subsequently filed a "First Amended Complaint" in Antrim County Circuit Court, defendants were again granted summary judgment, and plaintiff now appeals challenging the grant of summary judgment and the order changing venue. For purposes of this opinion, plaintiff's first amended complaint will be referred to simply as the complaint.

The complaint alleges that the defendant corporation owns certain property on Torch Lake and has taken steps to develop a residential condominium project on that property. It is alleged that the plaintiff association and three individual owners of nearby property instituted an action in 1970 pursuant to the Environmental Protection Act of 1970[1] to enjoin the proposed project, alleging that undue pollution would result. That action (referred to by the parties as "Action 849") has apparently never resulted in a final judgment, with the trial court retaining jurisdiction of the case in order to police defendant's activities to prevent undue pollution.

Plaintiff's complaint further alleges that on August 6, 1971, the corporate defendant and some of the individual defendants instituted, as plaintiffs, a civil action in Antrim County Circuit Court against the plaintiff association and various individual members of plaintiff, alleging individual and concerted tortious actions by the association and its members in obstructing the condominium project. That action, referred to by the parties as "Action 926", claimed damages in the amount of $2,500,000 and apparently continues to date.

Defendants' motion for summary judgment was premised on both GCR 1963, 117.2(1), failure to state a claim upon which relief can be granted,

---

[1] MCLA 691.1201, *et seq.;* MSA 14.528(201), *et seq.*

and 117.2(3), no genuine issue as to a material fact. Each of the five counts of the complaint was dismissed on one ground or the other as will be indicated in the following discussion.

I.

Count 1 of plaintiff's complaint was dismissed pursuant to GCR 1963, 117.2(1). On appeal, plaintiff asserts that it has stated a cause of action for abuse of process.

A motion grounded on failure to state a claim challenges only the legal sufficiency of the claim and is to be tested by the pleadings alone. All well-pled allegations and reasonable conclusions from them must be accepted as true. Dismissal is appropriate only when plaintiff's claim, on the pleadings, is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery. *Crowther v Ross Chemical & Manufacturing Co,* 42 Mich App 426; 202 NW2d 577 (1972), *Harvey v Aetna Insurance Co,* 72 Mich App 285; 252 NW2d 471 (1976).

Count 1 of the complaint, spread over some 30 pages, describes in somewhat greater detail the allegations which have already been set forth in this opinion and goes on equally painstakingly to describe the lake, the defendants' plans for the condominium development and their likely effect on the lake, actions by defendants in furtherance of those plans (including numerous allegations of improprieties in obtaining licenses and permits), and describes the progress of Action 849.

Paragraph 11 of the complaint begins to approach the substance of this matter. In some 15 pages, it details actions taken by defendants in their institution and prosecution of Action 926.

The complaint filed in Action 926 is incorporated in plaintiff's complaint. In an attempt to sum up another lengthy complaint in a few words, Action 926 seeks $2,500,000 in damages for allegedly tortious conduct by the Three Lakes Association and several individual members in their opposition to the condominium project. Torts alleged apparently include conspiracy, defamation and interference with contractual relations.

To return to this case, plaintiff goes on to allege that defendants, in Action 926, had no intention of accomplishing the ostensible purpose of the suit (to recover damages) but rather intended to use Action 926 as a means to coerce plaintiff to give up entirely all opposition to the condominium project. Thus, it is alleged, defendants have abused the discovery process by burdening plaintiff with requests for discovery while at the same time causing delays in complying with legitimate discovery procedures of plaintiff, that defendants at one point agreed to settle the case and subsequently refused to comply with that agreement, and that defendants have conducted that lawsuit in an oppressive manner in various other ways.

It is also claimed that defendants have stated that they would dismiss Action 926 without receiving any damages if plaintiff would agree not to express opposition to or otherwise oppose defendants' proposed condominium project.

The gist of plaintiff's complaint thus charges defendants with an abuse of process because they instituted the action for damages for the malicious and ulterior purpose of causing plaintiff so much expense and trouble in defending it that plaintiff would be forced to give up or at least be frustrated in pursuing its legitimate activities in opposition to defendants' condominium project.

We think plaintiff has stated a cause of action for abuse of process sufficient to withstand a motion for summary judgment.

The essence of the tort is explained in 3 Restatement of Torts, comment under § 682, the language of which was adopted by the Michigan Supreme Court in *Moore v Michigan National Bank,* 368 Mich 71, 75; 117 NW2d 105 (1962), as follows:

" 'The gravamen of the misconduct for which the liability stated in this section is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish. Therefore, it is immaterial that the process was properly issued, that it was obtained in the course of proceedings which were brought with probable cause and for a proper purpose or even that the proceedings terminated in favor of the person instituting or initiating them. The subsequent misuse of the process, though properly obtained, constitutes the misconduct for which the liability is imposed under the rule stated in this section.' "

Defendants contend that plaintiff's complaint fails to state a cause of action for this tort because, while it is alleged that defendants caused a summons to issue in Action 926, thereby requiring plaintiff to appear and defend that suit or suffer a default judgment, and plaintiff has sufficiently alleged improper motives on the part of defendants in bringing that action, defendants insist that the complaint contains no allegations which would take the case outside the rule stated in *Spear v Pendill,* 164 Mich 620; 130 NW 343 (1911).

In that case, a case which has been continually

looked to as the law on this tort,[2] the Court stated the elements of the tort as follows:

" 'Two elements are necessary to an action for the malicious abuse of legal process: *First,* the existence of an ulterior purpose, and, *second,* an act in the use of the process not proper in the regular prosecution of the proceeding. Regular and legitimate use of process, though with a bad intention, is not a malicious abuse of process.' " *Spear, supra,* at 623.

In *Spear,* the Supreme Court held that a verdict should have been directed in favor of the defendant after plaintiff had proved no more than that defendant, upon claiming that plaintiff owed him money and threatening to cause plaintiff trouble if he were not paid, signed a criminal complaint against plaintiff, whereupon plaintiff was arrested, charged, and pled guilty. It appears that while the defendant in *Spear* may have had an ulterior or improper motive in causing criminal process to issue against plaintiff, once the warrant had been issued defendant had no further connection with the proceedings. Thus, it was held that plaintiff had failed to prove an act in the use of the process not proper in the regular prosecution of the proceeding. *Spear, supra,* pp 624–625.

Defendants contend that this case, as far as appears from plaintiff's complaint, is no different than *Spear.* In addition, defendants rely on several cases from other jurisdictions including *Christensen v Gobar,* 47 Cal App 3d 613; 120 Cal Rptr 923 (1975). In *Christensen* it was held that a complaint alleging essentially that the plaintiff had been

---

[2] *See, e.g., McKay Machine Co v Bosway Tube & Steel Corp,* 24 Mich App 276; 180 NW2d 96 (1970), *Pilette Industries, Inc v Alexander,* 17 Mich App 226; 169 NW2d 149 (1969), *Belt v Ritter,* 18 Mich App 495, 499–500; 171 NW2d 581 (1969), *aff'd* 385 Mich 402; 189 NW2d 221 (1971).

required to defend a groundless lawsuit brought for malicious motives did not state a claim for abuse of process. For similar holdings, see *Miller v Stern,* 262 App Div 5; 27 NYS2d 374 (1941), and *Bronstein v Dayton Peninsula Corp,* 11 App Div 2d 1036; 206 NYS2d 12 (1960).

Defendants (as well as the trial court which accepted defendants' position) misapprehend the nature of the improper act in the use of the process which must be proved (or alleged). Perhaps the best explanation is found in Prosser, Torts (4th ed), § 121, p 857:

"Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. *There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance of any formal use of the process itself, which constitutes the tort."* (Emphasis added.) (Footnote omitted.)

In Harper & James, The Law of Torts, vol 1, § 4.9, p 331, it is said:

"If the process is employed from a bad or ulterior motive, *the gist of the wrong is to be found in the uses to which the party procuring the process attempts to put it.* If he is content to use the particular machinery of the law for the immediate purpose for which it was intended, he is not ordinarily liable, notwithstanding a vicious or vindictive motive. *But the moment he attempts to attain some collateral objective, outside the*

*scope of the operation of the process employed, a tort has been consummated."* (Emphasis added.)

Reviewing plaintiff's complaint by the appropriate standards for a summary judgment motion, it is alleged that defendants have actively used Action 926 for the ulterior and collateral purpose of coercing plaintiff to end all opposition to defendants' condominium project. If a specific allegation of an identifiable act be necessary, plaintiff's allegation that defendants offered to dismiss Action 926 in return for an end to all opposition by plaintiff to their condominium project, would be sufficient. The allegation is not that defendants simply offered to dismiss the damage action for tortious conduct upon the ending of such conduct. Rather, the offer was premised on plaintiff ending *all* opposition to the project, be it proper or tortious, and may be viewed on this motion for summary judgment as a use of Action 926 as a club to obtain a purpose collateral to its proper purpose.

The manner in which this case differs from *Spear* is best illustrated by *Marlatte v Weickgenant,* 147 Mich 266; 110 NW 1061 (1907), where it was held that the evidence presented at trial had been sufficient to present a jury question on whether an abuse of process had been committed. As in *Spear,* the plaintiff owed money to defendant and defendant had caused the issuance of a criminal warrant. In *Marlatte,* however, the evidence also showed that defendant had told plaintiff that she would be arrested under the warrant *unless she paid her debt.* The threat differentiated *Marlatte* from *Spear,* and a similar threat is inferable from the pleadings in this case. The complaint is sufficient. See, also, *Antcliff v June,* 81 Mich 477; 45 NW 1019 (1890), *Spellens v Spellens,* 49 Cal 2d 210; 317 P2d 613 (1957).

Defendants also claim that the complaint does not state a cause of action for abuse of process because it is not alleged that the ulterior purpose sought to be obtained was actually accomplished. Defendants claim that the lack of an allegation that plaintiff actually abandoned all opposition to the condominium project is fatal to plaintiff's claim. The cases cited by defendants for this proposition do not support it. Prosser, *supra,* p 858, says only that: "Some actual damage is necessary to the tort * * * ". Plaintiff has alleged actual damages and the complaint is not lacking in this regard.

Defendants finally assert that summary judgment would be appropriate due to a lack of a genuine issue of material fact pursuant to GCR 1963, 117.2(3). This claim was not the subject of a ruling below, however, and consequently cannot be reviewed at this time.

## II.

Count 2 of plaintiff's complaint incorporates most of Count 1 by reference, then asserts that defendants' conduct as alleged in the portions of Count 1 describing defendants' institution and prosecution of Action 926 in a harassing and delaying manner, constituted violations of the First, Fifth, and Fourteenth Amendments to the Federal Constitution, the National Environmental Policy Act of 1969,[3] and 42 USCA 1983.

This count was also dismissed for failure to state a claim.

On appeal, plaintiff concedes that the National Environmental Policy Act does not create a private right of action for damages and does not

---

[3] 42 USCA 4321, *et seq.*

contest the trial court ruling as it affects its claims under that act. See *Tanner v Armco Steel Corp,* 340 F Supp 532 (SD Tex, 1972).

Plaintiff asserts, however, that it has stated a cause of action under § 1983 for violation of rights secured to it by the cited amendments to the Federal Constitution.

"The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.' This second element requires that the plaintiff show that the defendant acted 'under color of law'." *Adickes v S H Kress & Co,* 398 US 144, 150; 90 S Ct 1598, 1604; 26 L Ed 2d 142, 150 (1970).

See, also, *Paul v Davis,* 424 US 693, 695–697; 96 S Ct 1155, 1158; 47 L Ed 2d 405, 410–411 (1976).

The trial court ruled that plaintiff had insufficiently alleged that actions taken by defendants were under color of state law. Plaintiff contends that state action occurred because defendants were represented by attorneys licensed by the State of Michigan, because defendants had obtained various permits and authorizations in the course of proceeding with their condominium project, and because legal process was issued in Action 926 by a state court.

Accepting plaintiff's allegations as true, and indulging in all reasonable inferences from them, these allegations are insufficient to establish that defendants' actions in prosecuting Action 926 were under color of state law. The mere fact that attorneys are licensed by the state does not render

their actions, nor those of their clients, to be those of a state official acting under color of law within the meaning of this act. *Skolnick v Martin,* 317 F2d 855, 857 (CA 7, 1963), *Hansen v Ahlgrimm,* 520 F2d 768 (CA 7, 1975), *Hill v McClellan,* 490 F2d 859 (CA 5, 1974), *Steward v Meeker,* 459 F2d 669 (CA 3, 1972).

Also, the mere institution and pendency of this state court lawsuit is not state action. *Stevens v Frick,* 372 F2d 378 (CA 2, 1967), *Henry v First National Bank of Clarksdale,* 444 F2d 1300, 1309 (CA 5, 1971), and cases cited therein. *Henry* discussed this issue at length, and distinguished *Shelley v Kraemer,* 334 US 1; 68 S Ct 836; 92 L Ed 1161 (1948), and *New York Times v Sullivan,* 376 US 254; 84 S Ct 710; 11 L Ed 2d 686 (1964), the cases most supportive of plaintiff's position, as follows:

"The clear message of Shelley v. Kramer is that it is judicial *enforcement* of a private discriminatory contract that brings the otherwise 'private action' within the ambit of the fourteenth amendment. What is common to both *Shelley* and *New York Times,* therefore, that is not present in our case, in that 'state action' was found in those cases only *after* a final judgment or otherwise dispositive order on the merits had been rendered by the state court. In contrast to these cases in which some dispositive action has been taken by a court, there is a long line of cases which conclude that a state, by merely holding its courts open to litigation of complaints, does not clothe the persons who use its judicial processes with the authority of the state." (Emphasis in original.) *Henry, supra,* p 1309.

Finally, the mere fact that the defendant corporation has received various permits and authorizations in the course of continuing its condominium development does not render its actions in suing plaintiff for damages to be state action. Generally,

the issuing of licenses and permits, and even intensive regulation, by the state does not render action taken by the licensee to be state action absent significant involvement of the state in conduct which is the subject of complaint. Compare *Moose Lodge No 107 v Irvis,* 407 US 163; 92 S Ct 1965; 32 L Ed 2d 627 (1972), with *Burton v Wilmington Parking Authority,* 365 US 715; 81 S Ct 856; 6 L Ed 2d 45 (1961). See, also, *Jackson v Metropolitan Edison Co,* 419 US 345; 95 S Ct 449; 42 L Ed 2d 477 (1974). No such significant involvement is alleged, and the relationship between the licenses and authorizations granted to defendant corporation and the prosecution of Action 926 is attenuated at best.

It is clear that plaintiff's allegations of state action are insufficient, and that summary judgment was correctly granted on this count.

### III.

Count 3 of plaintiff's complaint incorporates all of the allegations contained in Count 1, then asserts that plaintiff was entitled to the protection of the Michigan constitutional guarantees of equal protection of the laws, the right to peaceably assemble and consult for the common good, to freedom of speech, and to due process, plus the right to take action under the Environmental Protection Act of 1970 to protect natural resources from pollution, impairment, and destruction.

It is apparently the theory of plaintiff that Action 926 has caused a drain on its resources, thereby inhibiting plaintiff in the exercise of the stated constitutional and statutory rights. As best as we can make out plaintiff's argument in the trial court, it was that the trial court should recognize a cause of action for intentional interfer-

ence by private parties with such rights. Plaintiff cited no case law to the trial court which would indicate that such a cause of action exists in Michigan, and at one point plaintiff acknowledged that the Legislature had never implemented those rights by providing for such a cause of action. The trial court, referring by analogy to a Federal case, simply declined to recognize a new cause of action.

On appeal, the gist of plaintiff's argument is that the trial court's reliance on the Federal case was unwarranted and that, consequently, "insufficient justification" had been shown for dismissing this count of the complaint. Plaintiff has again failed to cite any case authority or present any legal argument or theory as to how defendants' actions in maintaining Action 926 violate plaintiff's constitutional and statutory rights, entitling plaintiff to damages on a theory independent of the abuse of process claim contained in Count 1. Plaintiff, as appellant, bears the burden of establishing that the trial court ruling was erroneous. While we are never unwilling to consider novel legal theories when properly supported, plaintiff has effectively abandoned this issue. Some of the allegations in this count may be relevant to proving damages, should plaintiff prevail on its claim of abuse of process, but they will not provide an independent theory for recovery.

## IV.

Count 4 of plaintiff's complaint seeks a declaratory judgment that defendants had entered into a binding contractual agreement with plaintiff to settle Action 926. Count 5 seeks damages for breach of this alleged settlement contract.

The complaint alleges that this agreement had been entered into early in 1973 and was evidenced

by, among other things, two letters between plaintiff's attorney and defendants' attorney which plaintiff attached to the complaint.

These counts of the complaint were the subject of a summary judgment motion by defendants pursuant to GCR 1963, 117.2(3). The trial judge was presented with affidavits and exhibits, primarily letters between attorneys for the parties, relating to these allegations.

Upon arguing the motion, plaintiff's counsel asserted that his letter of December 27, 1972, as president and counsel for the Three Lakes Association, to defendants' attorney, constituted an offer to settle all pending litigation. He claimed that the January 9, 1973 letter of defendants' attorney to him constituted an acceptance of that offer and resulted in a binding and enforceable contract as to the substance of a settlement agreement, which would be signed by all parties upon the preparation of documentation satisfactory in form to the parties. Finally, he argued that defendants' attorney had subsequently agreed to the form of proposed documentation.

The trial court, in his opinion, examined the letters relied upon by plaintiff and concluded that there had been no unqualified acceptance of an offer and that consequently no enforceable settlement agreement had been reached. Summary judgment was accordingly granted on Counts 4 and 5 of the complaint.

On appeal, plaintiff surprisingly does not attack the trial court's conclusion that no binding agreement was shown by the letters. Plaintiff asserts that Counts 4 and 5 state a claim upon which relief can be granted. Manifestly, this was not the issue decided below or presented here.

Plaintiff argues that the letters did not constitute the entire contract and that other evidence is relevant to determining whether a contract existed

and that the grant of summary judgment was consequently improper. This, however, was not the argument presented to the trial court. Plaintiff may not shift ground on appeal and come up with new theories here after being unsuccessful on the one presented in the trial court. *Thompson v Ecorse,* 7 Mich App 492; 152 NW2d 51 (1967), *Rinaldi v Livonia,* 69 Mich App 58, 64; 244 NW2d 609 (1976).

More to the point, plaintiff argues that the trial court's conclusion that the parties intended no final agreement by the letters did not justify summary judgment, as plaintiff's theory was that the agreement would be final only after documentation acceptable in form had been approved by the parties. However, it is clear that plaintiff's trial theory depended on a binding agreement as to substance being created by the exchange of letters. The trial court found that no such binding agreement had been reached, and subsequent discussions or even agreements as to the form of settlement documentation became irrelevant.

Summary judgment was correctly granted on Counts 4 and 5 of plaintiff's complaint.

## V.

Plaintiff finally attacks the Wayne County Circuit Court's order granting defendants' motion to change venue of this case to Antrim County. The matter was one primarily within the discretion of the judge hearing the motion. GCR 1963, 403, *Hunter v Doe,* 61 Mich App 465; 233 NW2d 39 (1975). The motion was granted for the convenience of the parties and witnesses and we are not persuaded that the trial court's action amounted to an abuse of discretion.

Affirmed in part, reversed in part. No costs, neither side having prevailed in full.