# STATE OF MICHIGAN

# COURT OF APPEALS

ALEXEI MOUTSATSOS,

      Plaintiff-Appellant,

v

CITY OF HUNTINGTON WOODS,
CHRISTOPHER VOGELHEIM, ALEX ALLIE,
HANK BERRY, and RAY KEE,

      Defendants-Appellees,

and

EUGENE LUMBERG, JOHN CARLSON, and
ROBERT GAVIN,

      Defendants.

UNPUBLISHED
November 22, 2016

No. 327838
Oakland Circuit Court
LC No. 2015-144801-CZ

Before: M. J. KELLY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Plaintiff appeals as of right the final order granting summary disposition to all defendants pursuant to MCR 2.116(C)(8) on his claims of malicious prosecution and abuse of process. Plaintiff's claims are based on an underlying action[1] in which defendants issued a civil infraction to plaintiff claiming that his driveway was not compliant with the city's building code. Plaintiff prevailed in that action essentially because defendants inspected the driveway twice and approved the construction. We affirm.

## I. FACTUAL BACKGROUND[2]

---

[1] Although plaintiff was the defendant in the underlying action, we refer to him as "plaintiff" throughout this opinion for clarity and conciseness.

[2] The facts are taken from plaintiff's complaint, as the trial court granted summary disposition under MCR 2.116(C)(8).

-1-

## A. THE UNDERLYING LAWSUIT

Plaintiff and his wife own residential property in Huntington Woods. Because their driveway was badly damaged, they applied for a construction permit to replace the driveway, which the City approved on July 2, 2008. Plaintiff's nextdoor neighbor, defendant Vogelheim, was a member of the City Planning Commission. Before construction began, Vogelheim expressed concern to plaintiff and to his contractor that the replacement driveway would cause Vogelheim's basement to leak. The contractor agreed to construct the driveway pitched less than normal, but still within code.

Defendant Kee, a City employee, conducted a rough inspection of the new driveway on July 8, 2008, and a final inspection on July 17, 2008. He approved the driveway both times. Vogelheim repeatedly complained to plaintiff and his wife that the driveway was not constructed as he thought it should be. Although the driveway was not altered since its completion, plaintiff placed a drainpipe to divert water to the street in an unsuccessful attempt to satisfy Vogelheim.

Relative to the driveway issue, Vogelheim communicated with defendant Berry between August 27, 2011 and September 11, 2011.[3] In those e-mails, Berry offered his assistance to resolve the dispute and Vogelheim accepted it; Berry communicated that he would start with a letter to plaintiff, but if plaintiff failed to comply, a ticket for an ordinance violation would be issued for a court appearance.

As a result, in a September 1, 2011 letter to plaintiff from Kee, plaintiff was told that the City had been made aware that plaintiff's driveway caused water to project onto his neighbor's property in violation of Section 6-59 of the City Code, and it ordered plaintiff to mitigate the situation within 14 days of the letter's date.

Vogelheim next contacted defendant City Manager Alex Allie on November 10, 2011, asking for an update regarding plaintiff, noting, "I just want some pressure to get this resolved." Allie replied that Vogelheim should call Allie on Monday for a status report.

The City issued a ticket to plaintiff on December 5, 2011, because he failed to comply with the Notice Letter (the "Civil Infraction"). Pursuant to the procedure outlined on the Civil Infraction, plaintiff denied responsibility, a citation was issued and filed with the court, and plaintiff exercised his right to appear in court for a formal hearing before a judge.

Plaintiff eventually filed a motion for summary disposition, which the district court denied, after which plaintiff sought leave to appeal to the circuit court. The circuit court granted leave to appeal. While the appeal was pending, Vogelheim listed his house for sale and executed a seller's disclosure form claiming that his basement had not leaked in years and had done so in the past for reasons unrelated to plaintiff's driveway. This contradicted the written summary of events that Vogelheim had provided to Berry. Plaintiff's attorney e-mailed a copy of the Seller's

---

[3] Berry was the Staff Liaison to the Planning Commission on which Vogelheim served.

Disclosure Statement to the City's attorneys on December 11, 2012, but the City continued to prosecute the Civil Infraction against plaintiff.

On January 13, 2013, the circuit court reversed the district court's order denying plaintiff's motion for summary disposition and remanded the case for entry of an order granting summary disposition to plaintiff in the underlying case. The court reasoned that, because neither inspection noted any ordinance violation and both approved the work, an outcome for the city would prejudice plaintiff and "render the inspection process meaningless." The district court dismissed the case with prejudice on February 13, 2013.

## B. THE INSTANT CASE

On January 12, 2015, plaintiff filed his complaint alleging malicious prosecution and abuse of power. The City filed a motion for summary disposition based on MCR 2.116(C)(7) and (C)(8), and soon thereafter the remaining defendants filed motions for summary disposition.[4]

The trial court held a motion hearing, and granted defendants' motions for summary disposition pursuant to MCR 2.116(C)(8), holding that plaintiff had failed to plead facts sufficient to state a cause of action for either abuse of process or malicious prosecution. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a summary disposition motion. *Spiek v Michigan Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion brought under MCR 2.116(C)(8) "tests the legal sufficiency of the claim on the pleadings alone to determine whether the plaintiff has stated a claim on which relief may be granted." *Id*. The factual allegations in the complaint are taken as true, "along with any reasonable inferences or conclusions which may be drawn from them." *Kauffman v Shefman*, 169 Mich App 829, 833; 426 NW2d 819 (1988). The motion is appropriately granted if "no factual development could justify the plaintiff's claim for relief." *Spiek*, 456 Mich at 337.

## III. MALICIOUS PROSECUTION

The trial court determined that plaintiff's complaint failed to state a claim for which relief could be granted because it did not allege facts that constituted special injury, a necessary element of malicious prosecution. Plaintiff argues that this was error because the only requirement for pleading special injury is that the alleged injury must be greater than the injury that normally results from the prosecution of similar cases, and that his complaint satisfied this requirement.

In a seminal case, the Michigan Supreme Court considered whether a claim for malicious prosecution arising from an underlying civil action must allege the element of special injury to

---

[4] Defendants Eugene Lumberg, John Carlson, and Robert Gavin also filed motions for summary disposition, but plaintiff did not appeal the granting of those motions.

be actionable. *Friedman v Dozorc*, 412 Mich 1; 312 NW2d 585 (1981).[5] The Court concluded that it must, in order "to limit the circumstances in which an action for the malicious prosecution of civil proceedings [could] be maintained." *Id*. at 42.

In *Friedman*, the physician plaintiff brought a claim for malicious prosecution against the attorneys who filed an unsuccessful medical malpractice claim against him. *Id*. at 16. In discussing the history of this cause of action, the Court noted that, from 1698 to the present day, only three types of damages could support this claim in England: "injury to one's fame (as by a scandalous allegation), injury to one's person or liberty, and injury to one's property." *Id*. at 32-33. The Court further noted that English caselaw defined these injuries narrowly. *Id*. at 33-34.

The *Friedman* Court examined relevant Michigan cases and concluded that none had "abrogated the traditional requirement that a plaintiff . . . [must] have suffered special injury *in the nature of an interference with person or property*." *Id*. at 34-35 (emphasis added). In *Friedman*, the plaintiff's alleged damages included the cost of defense; increased malpractice premiums, which caused the loss of two young associates who could not afford the increased premiums, which in turn required the plaintiff to work longer hours; damage to his reputation; embarrassment and mental anguish. *Id*. at 18-19. *Friedman* held that these damages did not rise to the level of special injury because they did not sufficiently "allege interference with his person or property." *Id*. at 17.

Several years later, we pointed out that "*Friedman* did not explain whether the 'English rule' has been modified in Michigan to eliminate the category of 'injury to one's fame' or whether damage to one's professional reputation is insufficient to meet the requirements of that category." *Barnard v Hartman*, 130 Mich App 692, 694-695; 344 NW2d 53 (1983). After closely analyzing *Friedman* and subsequent cases, we concluded that "[m]odern cases take the view . . . that 'special injury' must be some injury which would not necessarily occur in all suits prosecuted for similar causes of action." *Barnard*, 130 Mich App at 695, citing 52 Am Jur 2d, Malicious Prosecution, ¶ 11, pp 194-195 and *Donovan v Barnes*, 274 Or 701, 712; 548 P2d 980 (1976).

The plaintiff in *Barnard* was a court reporter who had been sued for allegedly "intentionally preparing a false and misleading transcript." *Barnard*, 130 Mich App at 693. She claimed that the lawsuit had damaged her professional reputation. *Id*. We determined that, even assuming that *Friedman* did not eliminate "injury to one's fame" from the three categories of special injury, such damage would normally result from an action like the one brought against her, and therefore she had failed to plead special injury. *Id*. at 696.

---

[5] The other three elements of a claim for malicious prosecution are "(1) prior proceedings terminated in favor of the present plaintiff, (2) absence of probable cause for those proceedings, (3) 'malice,' more informatively described by the Restatement as 'a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based.' " *Friedman*, 412 Mich at 48. Here, the parties dispute only the special injury element.

The next year, we acknowledged that "[*Friedman*] did not determine the precise boundaries of the term 'special injury,' " but noted that it "cited with approval prior cases in which the special injury alleged was the seizure of property or a result equivalent to a seizure of property." *Young v Motor City Apartments Ltd*, 133 Mich App 671, 676; 350 NW2d 790 (1984). The damages in *Young* were alleged as the cost of defense, lost revenue due to time spent on the defense, damage to private and professional reputation, mental anguish with associated medical expenses, and lost profits. *Id*. at 677. With respect to special injury, we held that the plaintiff's allegations "[fell] short of being equivalent to a seizure of property" and did not differ substantially from those of the doctor in *Friedman*. We concluded that "[i]nterference with one's usual business and trade, including the loss of goodwill, profits, business opportunities and the loss of reputation, is not cognizable as special injuries." *Id*.

In the case at bar, plaintiff has alleged that the underlying suit caused damages of embarrassment, loss of enjoyment of property, unnecessary legal expense, his wife's emotional distress, time away from his family and time away from his occupation. Plaintiff does not allege that defendants' action against him interfered with his use of his driveway or with his personal freedom of movement in any way; he does not argue that the damages he did allege were equivalent to a taking of his person or property, and it is clear that they do not. Therefore, plaintiff must rely on the only remaining category of injury—injury to his "fair fame." The only injury he alleged to his fair fame was embarrassment. *Barnard* held that damage to one's professional reputation does not suffice as special injury. *Barnard*, 130 Mich App at 693. Here, plaintiff alleged only the less severe injury of embarrassment, which is clearly insufficient to allege special injury. See also *Young*, 133 Mich App at 677-678 (holding that public ridicule, injury to public and private reputation and goodwill were insufficient) and *Friedman*, 412 Mich at 17 (holding that damage to professional reputation, embarrassment and mental anguish were insufficient). No precedent has been presented establishing that damage to reputation or simple embarrassment is sufficient for a special injury, and we are aware of none. We hold that the damages plaintiff has alleged do not constitute special injury and therefore plaintiff failed to state a claim for malicious prosecution.[6]

Plaintiff also argues that he suffered special injury because he was subjected to repetitive litigation and harassment. He bases this argument on our language in *Kauffman*, "that under some circumstances a succession of suits can in and of itself result in injury which would not necessarily occur in similar litigation." *Kauffman*, 169 Mich App at 839. That injury would be the burden of having to litigate the same or similar lawsuit after reasonably expecting that the first lawsuit would bring peace between the parties. *Id*. We held, however, that the circumstances in *Kauffman* did not constitute such a special injury. There, the defendant bank

---

[6] Plaintiff argues that his wife's emotional distress is a special injury. Even assuming plaintiff could claim his wife's injuries as part of his damages, the alleged injuries do not fit into any of the three categories of injury. She allegedly suffered emotional distress, not interference with her person, property or reputation. Such damages are insufficient. See *Young*, 133 Mich App at 677-678 *(*holding that "[m]edical expenses for treatment of various illnesses and mental anguish related to defending the lawsuit" were part of insufficiently pleaded injuries).

instituted two separate underlying causes of action after the couple from whom the plaintiffs had purchased a home on a land contract assigned their interest in the land contract to the bank to secure another mortgage, but defaulted two separate times. *Id*. at 832-833. The bank sued the sellers and the plaintiffs in order to get a ruling on the plaintiffs' rights to the property relative to the sellers' default on their mortgage. *Id*. The first case was dismissed after the sellers cured the default. We concluded that the second lawsuit was not repetitive in the sense that it could constitute special injury because the plaintiffs had no reasonable expectation that the sellers would not default again, resulting in another lawsuit. *Id*. at 841.

Here, plaintiff maintains that the procedure he went through to obtain his permit and inspections was analogous to a lawsuit, in that it left him with a reasonable expectation that the matter had been resolved. Perhaps if plaintiff's analogy were comparing a succession of civil infraction "tickets" to a succession of lawsuits, it might have some merit. However, there is no logical comparison between *plaintiff* applying for a permit to do work on his property and *the City* bringing a lawsuit against him. Here, the city brought action against plaintiff only once— when it issued the citation. Because there was no successive action against plaintiff, his reliance on *Kauffman* is misplaced.

Plaintiff's arguments, while creative, have no merit. Because he did not allege damages that constitute special injury under Michigan law, the trial court did not err when it granted summary disposition to defendants under MCR 2.116(C)(8) on plaintiff's malicious prosecution claim.

### III. ABUSE OF PROCESS

The trial court dismissed plaintiff's claim for abuse of process because the complaint failed to allege an ulterior purpose and because it did not allege facts that constituted an irregular act in the prosecution of the underlying case. Plaintiff argues that he alleged an ulterior purpose when he alleged that defendants used the legal process to force him to rebuild a driveway that they already knew complied with city ordinances. He argues that the improper acts occurred when defendants filed an *illegal* action against him and maintained that action even after he provided proof that Vogelheim was lying about plaintiff's driveway causing his basement to flood. While we agree that plaintiff adequately alleged that defendants acted with an improper purpose, we disagree that he alleged an improper act in the use of that process.

Abuse of process consists of two elements: an ulterior purpose and "an act in the use of the process not proper in the regular prosecution of the proceeding." *Three Lakes Ass'n v Whiting*, 75 Mich App 564, 572; 255 NW2d 686 (1977). The gravamen of this tort is "'the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish.'" *Id*. at 571, quoting *Moore v Michigan Nat'l Bank*, 368 Mich 71, 75; 117 NW2d 105 (1962).

In *Three Lakes Ass'n*, this Court held that the plaintiff (the "Association") had stated a claim for abuse of process. *Three Lakes Ass'n*, 75 Mich App at 571. There, the Association originally brought an Environmental Protection Act claim against the defendants (the "Developers"), who were developing a condominium project on some lakefront property. *Id*. at

568. The Developers, in turn, brought an action against the Association for "conspiracy, defamation and interference with contractual relations." *Id*. at 568, 570.

In its subsequent abuse of process case, the Association alleged that the Developers "had no intention of accomplishing the ostensible purpose of the suit . . . but rather intended to use [the lawsuit] as a means to coerce plaintiff to give up entirely *all* opposition to the condominium project." *Id*. at 570 (emphasis added). This Court agreed that this allegation satisfied the first element of abuse of process because coercing a person to stop legal behavior is not the purpose for which the process used (a lawsuit alleging torts such as defamation and interference with contract) was designed. *Id*. at 574; see also *Moore*, 368 Mich at 75.

Here, we reject the trial court's conclusion that plaintiff failed to allege an ulterior purpose because the purpose that he attributed to defendants, to force him to rebuild his driveway, was the same purpose for which the civil infraction process was designed; not a collateral purpose. Instead, if plaintiff's allegations are taken as true, then the purpose of all defendants (except Vogelheim) in bringing the civil infraction process to bear was to curry favor with Vogelheim, who was involved in city politics, by forcing plaintiff to rebuild a driveway that it knew was in compliance with the City's ordinance based on the City's own inspections. The purpose of the ordinance governing the installation of driveways, in contrast, is to provide a process by which the City can bring nonconforming driveways into compliance, or, as plaintiff states it, to enforce the law. As in *Three Lakes Ass'n*, defendants allegedly were attempting to influence legal actions through a process designed to stop illegal actions. Taking plaintiff's allegations as true, he satisfied the first element by alleging that defendants had an ulterior purpose in bringing the action.

This does not hold true with respect to the second element. As this Court pointed out in *Three Lakes Ass'n*, 75 Mich App at 572, "'[r]egular and legitimate use of process, though with a bad intention, is not a malicious abuse of process.'" *Id*., quoting *Spear v Pendill*, 164 Mich 620, 623; 130 NW 343 (1911). In *Three Lakes Ass'n*, this Court held that the improper act required for the second element was stated sufficiently by the allegation that the Developers had offered to dismiss their tort action against the Association "if plaintiff would agree not to express opposition to or otherwise oppose defendants' proposed condominium project." *Id*. at 570, 574. Because they offered to dismiss the case if the Association would stop *all* opposition to their project—*legal as well as illegal*—the Developers were misusing the tort action process "as a club to obtain a purpose collateral to its proper purpose." *Id*. at 574.

A few years later, in *Friedman*, 412 Mich at 31, the Michigan Supreme Court also held that a plaintiff had "failed to allege that [the] defendants committed some irregular act in the use of process." *Id*. There, the only improper act that the plaintiff alleged was the issuing of the summons and complaint in the underlying action without adequate investigation. This was not enough because "a summons and complaint are properly employed when used to institute a civil action." *Id*. Likewise, in *Young*, 133 Mich App at 681, we held that the plaintiff had failed to state a claim for abuse of process because the record did not reveal any act by the defendants outside of the formal use of process to extort or otherwise oppress the plaintiff. *Id*. at 682.

Plaintiff attempts to distinguish *Friedman* and *Young* on the basis that, unlike those plaintiffs, he alleged that the action was illegal at its inception and that it was continued after

proof that it was based on a lie. The holdings in these cases, however, are simply that there must be an *act* that is not appropriate to the process. Plaintiff's allegations go only to intent. Taking the allegations as true, defendants instituted the action in the way such actions are always instituted, and continued to maintain the action in the way that such actions are maintained. In other words, these allegations fall short of establishing "[s]ome definite act or threat not authorized by the process." *Three Lakes Ass'n*, 75 Mich App at 572.

Because the trial court did not err in granting summary disposition to defendants on plaintiff's abuse of process claim or his malicious prosecution claim, we do not reach the issue of whether defendants were entitled to governmental immunity.

## IV. CONCLUSION

We affirm the trial court's grant of summary disposition to defendants on plaintiff's claims for malicious prosecution and abuse of process pursuant to MCR 2.116(C)(8).

Affirmed. No costs to either side. MCR 7.219(A).


/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Stephen L. Borrello

-8-